UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEREDITH ASHLEY O'CONNELL,<br><br>             Plaintiff,<br><br>       v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>             Defendant. | No.  2:14-cv-1941-KJN<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act").[1]  In her motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from January 1, 2010, through February 12, 2013, the date of the ALJ's decision.  (ECF No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment, and plaintiff subsequently filed a reply brief.  (ECF Nos. 16, 17.)

---

[1] This action was initially referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15), and both parties voluntarily consented to proceed before a United States Magistrate Judge for all purposes.  (ECF Nos. 9, 11.)

For the reasons discussed below, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and enters judgment for the Commissioner.

I. BACKGROUND

Plaintiff was born on October 21, 1973, has a high school education with some college classes, is able to communicate in English, and previously worked primarily as a waitress and bartender.[2] (Administrative Transcript ("AT") 40-41, 80, 167, 176.) In May 2011, at the age of 37, plaintiff applied for DIB and SSI, alleging that her disability began on June 1, 2008, and that she was disabled primarily due to chronic pancreatitis, arthritis in the left arm, manic depressive disorder with borderline personality traits, bipolar disorder, and ulnar nerve pain. (AT 18, 103-04, 167, 176, 223.) After plaintiff's applications were denied initially and on reconsideration, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on January 14, 2013, and at which plaintiff, represented by an attorney, and a vocational expert ("VE") testified. (AT 36-84.) At the hearing, plaintiff amended her alleged onset date of June 1, 2008 to January 1, 2010. (AT 43-45.)

In a decision dated February 12, 2013, the ALJ determined that plaintiff had not been disabled, for purposes of the Act, from plaintiff's alleged disability onset date through the date of the ALJ's decision. (AT 18-30.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on July 3, 2014. (AT 1-3.) Thereafter, plaintiff filed this action in federal district court on August 20, 2014, to obtain judicial review of the Commissioner's final decision. (ECF No. 1.)

II. ISSUES PRESENTED

On appeal, plaintiff raises the following issues: (1) whether the ALJ improperly evaluated the medical opinion evidence; (2) whether the ALJ erroneously discounted plaintiff's credibility;

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical and mental health history, the court does not exhaustively relate those facts in this order. The facts related to plaintiff's impairments and treatment will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

(3) whether the ALJ erroneously assessed a third party statement; (4) whether the ALJ failed to properly formulate plaintiff's residual functional capacity and corresponding hypothetical to the VE; and (5) whether the VE's testimony was deficient.

III.  LEGAL STANDARD

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.  DISCUSSION

A.  Summary of the ALJ's Findings

The ALJ evaluated plaintiff's entitlement to DIB and SSI pursuant to the Commissioner's standard five-step analytical framework.[3]  As an initial matter, the ALJ noted that plaintiff met the

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program.  42 U.S.C. §§ 401 et seq.  Supplemental Security Income is paid to disabled persons with low income.  42 U.S.C. §§ 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.

3

insured status requirements of the Act for purposes of DIB through June 30, 2016. (AT 20.) At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 1, 2010, plaintiff's amended alleged disability onset date. (Id.) At step two, the ALJ found that plaintiff had the severe impairment of chronic pancreatitis. (AT 21.) However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AT 22.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except she can occasionally balance, stoop, kneel, crouch, and crawl. She can occasionally climb ramps and stairs, but should never climb ladders, ropes, or scaffolding. Secondary to her prescription regimen, the claimant should not work at heights, with heavy machinery, or around hazards as a safety precaution.

(AT 24.)

At step four, the ALJ found, based on the VE's testimony, that plaintiff was capable of performing past relevant work as a waitress, counter attendant, and bartender. (AT 28.) In the alternative, the ALJ proceeded to step five and determined that, considering plaintiff's age,

---

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

4

education, work experience, and RFC, there were other jobs that existed in significant numbers in the national economy that plaintiff could perform. (AT 29-30.)

Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in the Act, from plaintiff's alleged disability onset date through the date of the ALJ's decision. (AT 30.)

    B.  Plaintiff's Substantive Challenges to the Commissioner's Determinations

      *Medical Evidence*

Plaintiff argues that the ALJ improperly weighed the medical opinion evidence by relying on the opinion of a non-examining state agency physician and rejecting the opinions of plaintiff's treating physicians. Under the circumstances of this case, the court disagrees.

Here, the ALJ appropriately relied on the opinion of state agency physician Dr. Ronald Crow, who found plaintiff capable of performing light work, because his opinion was consistent with the weight of the record evidence. (AT 27-28, 602-11.) See Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (noting that the opinion of a non-examining medical expert may constitute substantial evidence when it is consistent with other independent evidence in the record). Dr. Crow reasoned that, although plaintiff suffered from chronic pancreatitis with intermittent flares, there was no longitudinal documentation that plaintiff was significantly symptomatic between the flares. (AT 608.) Additionally, Dr. Crow noted that non-compliance with treatment and alcohol abuse were involved. (Id.) Indeed, the record evidence indicates that plaintiff has a history of heavy alcohol use, and that most of the medical care related to plaintiff's pancreatitis was rendered through visits to the emergency room, which were frequently precipitated by consumption of alcohol and/or fatty foods in non-compliance with physicians' instructions. (See, e.g., AT 353, 354, 427, 434, 442, 446, 500, 516, 520, 528 [reported drinking heavily], 544, 552 [drank 7 beers on a fishing trip], 557, 568-69 [drinks about 4 beers on a daily basis], 650.) Even assuming, without deciding, that plaintiff's symptoms attributable to her pancreatitis rose to a disabling level, a claimant cannot receive disability benefits if alcoholism or drug addiction would be a contributing factor material to a finding of disability. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Furthermore, plaintiff can hardly fault the ALJ for not relying

5

on an examining source, because plaintiff refused to attend her scheduled physical and mental consultative examinations. (AT 88, 90-91.)

The ALJ also provided specific and legitimate reasons for rejecting the opinions of plaintiff's treating physicians, Drs. Marsha Alexander and Michael Amster, who opined that plaintiff was capable of less than sedentary work, would have excessive absences, and was thus disabled. (AT 257, 258-61, 595-98, 619.) Both opinions were fairly conclusory and contained little clinical findings and medical rationale to justify their severe findings. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Notably, plaintiff's treatment notes with Dr. Alexander, plaintiff's primary care provider, are also relatively brief and sparse, and as Dr. Crow noted, plaintiff did not appear to have an extensive treatment relationship with a treating source, because most of her care was rendered through emergency room encounters. (AT 608.) As the ALJ observed, Dr. Alexander's opinion is further undermined by the fact that she ostensibly found that plaintiff's symptoms were at a disabling level as of July 2008 (around the time of plaintiff's original alleged disability onset date), even though plaintiff actually performed substantial gainful activity in 2009 and had earnings just shy of substantial gainful activity in 2010. (AT 27, 261.) Additionally, the ALJ legitimately found that Dr. Amster's opinion, despite his specialization in pain management, was significantly undermined by the fact that he indicated that the assessed functional limitations were "per pt report." (AT 27, 596.) For the reasons discussed below, the ALJ properly discounted plaintiff's credibility, and thus Dr. Amster's opinion, which by his own account relied heavily on plaintiff's subjective reports, is likewise entitled to minimal weight. Finally, neither Dr. Alexander nor Dr. Amster addressed the impact of plaintiff's alcohol use on her pancreatitis and resulting functional limitations, even though Dr. Alexander herself documented plaintiff's "alcohol abuse" as late as March 2011. (AT 354.)

In light of the above, the court finds no error with respect to the ALJ's evaluation of the medical opinion evidence.

///

*Plaintiff's Credibility*

Plaintiff further contends that the ALJ erroneously discounted plaintiff's testimony concerning her own symptoms and functional limitations.

In Lingenfelter v. Astrue, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis.  First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.  The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom.  Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted).  "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...."  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."  Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'"  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id. at 959.

In this case, the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's testimony.

The ALJ properly found that plaintiff's testimony was inconsistent with the medical evidence, as properly weighed. (AT 25-28.) To be sure, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005). However, the medical evidence is nevertheless a relevant factor for the ALJ to consider. Id. at 681.

The ALJ also reasonably referenced plaintiff's non-compliance with treatment by continuing to consume alcohol and failure to follow a proper diet contrary to her physicians' advice. (AT 25-26.) See Molina, 674 F.3d at 1113 ("We have long held that, in assessing a claimant's credibility, the ALJ may properly rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment."). By way of example, in April 2010, plaintiff was advised by one of her doctors that she was intolerant to taking any alcohol, and that even a small drop could cause her to go into an acute phase of pancreatitis. (AT 516.) Although plaintiff stated that she would no longer ingest any alcoholic substances, she subsequently continued to consume alcohol. (AT 516, see also AT 446 [February 2011 ER visit after consuming 2 glasses of wine], 354 [March 2011 visit with Dr. Alexander noting alcohol abuse], 427 [April 2011 ER visit after plaintiff consumed fatty foods and wine], 415 [June 2011 ER visit after consuming wine and buffet food].)

The ALJ also legitimately considered plaintiff's refusal to appear at scheduled consultative examinations in evaluating plaintiff's credibility. (AT 26.) See Zamora v. Commissioner, 471 Fed. App'x 579, 580 (9th Cir. 2012) (unpublished) ("the ALJ did not err in discounting Zamora's credibility due to her failure to attend either of two scheduled consultative evaluations"). In this case, plaintiff did not fail to attend the consultative examinations due to incapacity, but instead acted on her attorney's advice. (AT 88, 90-91.) Although it appears that plaintiff's attorney personally felt that one of the assigned consultative examiners, Dr. Brimmer, was biased against disability claims, the record contains no evidence of such bias beyond

1 counsel's allegations, let alone evidence of any bias against plaintiff personally. Moreover, plaintiff fails to explain why she failed to attend both her physical and mental consultative examinations.

The ALJ further properly considered plaintiff's work record. (AT 20, 27-28.) As noted above, at the administrative hearing, plaintiff amended her original alleged disability onset date of June 1, 2008, to January 1, 2010, after plaintiff's counsel acknowledged that plaintiff performed substantial gainful activity in 2009, and that her earnings in 2010 were just shy of substantial gainful activity. (AT 20, 27, 43-45.) Additionally, as the ALJ pointed out, "the claimant's earnings record indicates that the claimant worked only sporadically even *prior* to the *original* alleged onset date and often only on a part time basis," raising the question of whether plaintiff's claimed inability to work is in fact attributable to her medical impairments. (AT 28 [emphasis in original], see also AT 181-84.)

In light of the above, the court concludes that the ALJ provided several specific, clear, and convincing reasons for discounting plaintiff's testimony.[4]

*Third Party Evidence*

Plaintiff also argues that the ALJ erroneously assessed a third party statement submitted by plaintiff's landlord, housemate, and friend Todd Lowdermilk. (AT 262-72.) "[C]ompetent lay witness testimony cannot be disregarded without comment" and "in order to discount competent lay witness testimony, the ALJ must give reasons that are germane to each witness." Molina, 674 F.3d at 1114.

In this case, the ALJ referenced and summarized Mr. Lowdermilk's statement, but gave it minimal weight in light of Mr. Lowdermilk's limited opportunity to observe plaintiff while he worked during the day. (AT 25.) Even though plaintiff counters that Mr. Lowdermilk had an

---

[4] The parties dispute, and devote significant discussion to, whether it was proper for the ALJ to reference routine and conservative treatment and plaintiff's daily activities as reasons for discounting plaintiff's credibility. However, the court need not reach those issues in this case, because the ALJ provided several other specific, clear, and convincing reasons for discounting plaintiff's credibility. See Molina, 674 F.3d at 1115 (harmless error when ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

9

opportunity to observe plaintiff's daily routine on his days off, the ALJ correctly pointed out that Mr. Lowdermilk answered "Don't Know" to numerous questions on the form he completed. (AT 25, 262-72.) In any event, Mr. Lowdermilk's statement essentially echoed plaintiff's own testimony and, as discussed above, the ALJ already provided specific, clear, and convincing reasons for discounting plaintiff's testimony, which are equally germane to the third-party testimony. See Molina, 674 F.3d at 1115-22.

*RFC/Hypothetical to the VE*

In light of the court's conclusion that the ALJ properly evaluated the medical evidence, plaintiff's testimony, and the third party testimony, the court also finds that the ALJ's RFC assessment and corresponding hypothetical posed to the VE were supported by substantial evidence.

The record evidence also does not support any additional, concrete functional limitations attributable to plaintiff's other alleged impairments, such as arthritis in the left arm, manic depressive disorder with borderline personality traits, bipolar disorder, and ulnar nerve pain. Furthermore, any argument that the ALJ improperly assessed or failed to develop the evidence with respect to those conditions is devoid of merit, because, as discussed above, plaintiff herself obstructed further development of the evidence by failing to appear for her physical and mental consultative examinations.

*VE Testimony*

Finally, plaintiff contends that the ALJ erred by not asking the VE whether her testimony was consistent with the Dictionary of Occupational Titles ("DOT"). However, the administrative hearing transcript indicates that the VE consistently referenced the DOT in her testimony, and the ALJ found that the VE's testimony was consistent with the DOT. (AT 29, 80-83.) Plaintiff does not substantively challenge that determination. Moreover, plaintiff appears to concede that any alleged technical error was harmless: "In this particular case it may be *harmless* error because the outcome of the case does not hang on the balance from this omission. The gravamen of plaintiff's arguments address other issues that are more *determinative* of the outcome of the hearing." (ECF No. 15 at 25 [emphasis in original].)

V.     CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is free from prejudicial error and supported by substantial evidence in the record as a whole.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 15) is DENIED.

2. The Commissioner's cross-motion for summary judgment (ECF No. 16) is GRANTED.

3. Judgment is entered for the Commissioner.

4. The Clerk of Court shall close this case.

IT IS SO ORDERED.

Dated:  September 25, 2015

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE